UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GASPAR SALAS, | § | |
| | § | |
| v. | § | CIVIL ACTION NO._____ |
| | § | |
| GE OIL & GAS | § | JURY TRIAL DEMANDED |

**PLAINTIFF, GASPAR SALAS' ORGINAL COMPLAINT
AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES GASPAR SALAS, Plaintiff herein, complaining of GE OIL & GAS, Defendant, and for cause of action would respectfully show unto this Court the following:

**DISCOVERY CONTROL PLAN**

1.  Plaintiff intends for discovery to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

**PARTIES**

2.  Plaintiff, GASPAR SALAS is an individual who resides in Harris County, Texas.

3.  Defendant, GE OIL & GAS, is a corporation duly organized and existing under the laws of the State of Texas, with its principal place of business located at 4424 W. Sam Houston Parkway North, Houston, Texas, 77041.

**JURISDICTION AND VENUE**

4.  This Court has federal question jurisdiction under the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964

**NATURE OF ACTION**

1

5. This is an action under Title 42 U.S.C. Section 2000e et. Seq. and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of discrimination.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## NOTICE OF ALLEGATIONS

7. Gaspar Salas, a 32 year old Mexican American male, was hired by Dresser/GE Oil & Gas to be a machinist on or about July 11, 2011.

8. After working for GE Oil & Gas for approximately 3 months, Mr. Salas was transferred to another department where he began working under the supervision of Donald Gaines, an African American male.

9. The first day that Mr. Salas began working under the supervision of Gaines, Gaines informed Mr. Salas that Mr. Salas needed to produce more work.

10. Two weeks after Mr. Salas began working under the supervision of Gaines, Gaines starting calling Mr. Salas names and making references toward Mr. Salas, such as, "dumbass," "motherfucker."

11. The next day Mr. Salas reported Gaines to John Armas, the shop manager who is over Gaines.

12. Armas told Mr. Salas that he would talk to Gaines.

13. After Mr. Salas reported Gaines to Armas, Gaines retaliated and his treatment toward Salas became worse.

14. The next day Mr. Salas reported Gaines behavior to GE's human resources department but no actions were taken by the human resources department.

15. After reporting Gaines to the human resources department, both Gaines and Wilson, an African American lead, began retaliating against Mr. Salas by harassing Mr. Salas.

16. Gaines threatened Mr. Salas' livelihood by telling Mr. Salas, "I'm going to put you back where you started."

17. Gaines started reducing Mr. Salas' work hours, while Travis (white male) and Wilson (black male) hours were not reduced.

18. Mr. Salas went to the human resources department to report the retaliation and harassment in an attempt to seek help.

19. The human resources department claimed that Mr. Salas denied the work hours and that Mr. Salas was not a "good hand" on the weekend.

20. On one occasion, another employee, Wilson, an African American, threatened to physically assault Mr. Salas at work, the manager Gaines did nothing.

21. Mr. Salas, along with the employee, Wilson, that made the threat, talked to Gaines during the encounter.

22. While Mr. Salas and the employee were speaking with Gaines, Wilson, the African American stated, referring to Mr. Salas, "Yes, I called him a motherfucker and I'm going to kick his ass."

3

23. Mr. Salas complained to Gaines about the racist and threatening treatment by Wilson an African American.

24. In response, Gaines stated that he did not hear the threatened remark made by Wilson, although Wilson made the remarks in Gaines presence.

25. Gaines threatened to discipline Mr. Salas for reporting the discriminatory conduct by telling Mr. Salas, "You're going to get in trouble and you're going to be in the office."

26. The next day Mr. Salas went to the human resources department to report the incident, which they did not.

27. On one occasion Gaines, the African American supervisor over Mr. Salas approached Mr. Salas and begin telling Mr. Salas in a derogatory manner, that he did not know anything, that he was a Mexican, and that he could not do anything to Gaines about it because Gaines would deny everything.

28. The human resources department told Mr. Salas that they would investigate the incident and get back with him in two weeks.

29. Gaines continued to make derogatory comments toward Mr. Salas, such as, "what you need to do is fix your green card, you beaner," and "what, what I can't understand you." The "I can't understand you" was to demean Mr. Salas' national origin.

30. Mr. Salas voiced his concerns regarding the discriminatory treatment and harassment to the human resources department yet again, but the human resources department did not take any actions.

4

31. Gaines started telling Mr. Salas to turn his Spanish music down while other non-Spanish music was allowed to be played.

32. Gaines would discipline Mr. Salas and other Hispanic employees for conduct that others would get away with. Other Hispanic employees complained about Gaines treatment toward them, also.

33. Guillermo told Mr. Salas that he was directed to find any reason he could to fire Mr. Salas.

34. Also when speaking with human resources personnel, Mr. Salas was told that another employee was also directed to find a reason to get Mr. Salas fired.

35. For annual performance reviews, Gaines' review of Mr. Salas contained primarily negative comments; as a result Mr. Salas was only given a .20 cent raise after his first year, and no raise at all during the second year, it is the Plaintiff's belief that other similarly situated African American and White employees received much higher raises during this period.

36. Over the course of 3 years Mr. Salas went to the human resources department between 8-9 times to report the harassment in an attempt to seek help but continued to be subjected to discriminatory conduct.

### **RESPONDEAT SUPERIOR AND RATIFICATION**

37. Wherever in this complaint it is alleged that Defendant, GE Oil & Gas, did any act or thing, it is meant that Defendant's officers, agents, servants, employees or representatives did such act and/or that at the time such act was done, it was done with the full authorization or ratification of Defendant or was done in the

5

normal routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## RACE DISCRIMINATION

38. Defendant, GE Oil & Gas, by and through Defendant's agents, intentionally engaged in unlawful employment practices involving Plaintiff because of his race, color, and/or national origin.

39. The unlawful employment practices of Defendant, GE Oil & Gas, by and through Defendant's specifically Donald Gaines, had a disparate and adverse impact on Plaintiff because of his race, color, and/or national origin. Such employment practices were not job-related and were not consistent with business necessity.

40. Defendant, GE Oil & Gas, by and through Defendant's agents, also violated Plaintiff's rights under 42 U.S.C. Section 1981.

## DISCRIMINATION

41. Defendant, GE Oil & Gas, by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classification Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity of adversely affect his status because of Plaintiff's race in violation of 42 U.S.C. Section 2000e (2)(a) and 42 U.S.C. Section 1981.

42. Defendant, GE Oil & Gas, by and through Defendant's agents, classified Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e (2)(a) and 42 U.S.C. Section 1981.

43. Plaintiff alleged that GE Oil & Gas, by and through Defendant's agents, discriminated against Plaintiff on the basis of race with malice or with reckless indifference to the state-protected rights of Plaintiff.

## RETALIATION

44. Plaintiff alleged that agents of Defendant instituted a campaign of retaliation which included Plaintiff's supervisor mistreating Plaintiff, reducing Plaintiff's work hours, making racially charged and embarrassing comments toward Plaintiff, threatening to send Plaintiff to another department, and on one occasion threatening to report Plaintiff to upper management because Plaintiff reported that another employee threatened to physically assault Plaintiff. This retaliation was and is due to Plaintiff exercising his rights by reporting the supervisor's actions and filing complaints with the human resources department on several different occasions in an effort to stop the mistreatment from his supervisor, and other employees. Plaintiff suffered damages for which Plaintiff herein sues.

## CAUSES OF ACTION

45. Relying on the foregoing allegations, and such proof as may be discovered in this case and adduced at trial, Plaintiff is informed and believe that he was discriminated and retaliated against because of his race and national origin in violation of Title VII of the Civil Rights Act of 1964.  This practice of retaliation is the "leading reason why people stay silent instead of voicing their concerns about bias and discrimination." Brake, *Retaliation*, 90 Minn. L. Rev. 18, 20 (2005).

46. As a direct and proximate consequence of Defendants' actions, Plaintiff has been damaged.

47. Defendant engaged in discrimination and retaliation.

## **PRAYER**

WHEREFORE PREMISES CONSIDERED, Plaintiff request an injunction, enjoining Defendant from engaging in unlawful employment practices, a jury enter a judgment in favor of Plaintiff and against Defendant for actual damages, exemplary damages, treble damages as permitted by law and within the jurisdictional limits of the Court; reasonable attorney fees, costs of this action; and such other and further relief as the Court deems just and proper.

Respectfully submitted,

/S/ REGINALD E. MCKAMIE

Reginald McKamie, Sr.
Attorney at Law
1210 Antoine Drive
Houston, Texas 77055
(713) 465-2889 office
(713) 465-2894
13686750 State Bar No.

**PLAINTIFF HEREBY DEMAND TRIAL BY JURY**

8